U S. DISTRICT COURT
WESTERN DISTRICT of LOUISIANA
RECEIVED - ALEXANDRIA

APR 0 3 2007

ROBERT H. SHEMWELL, CLERK
BY _____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| ANTHONY MONTECINO | CIVIL ACTION NO. 06-CV-1158 |
|---|---|
| VERSUS | JUDGE DRELL |
| LYNN COOPER, ET AL. | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. § 1983) filed *in forma pauperis* on July 7, 2006, by *pro se* plaintiff Anthony Montecino. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (DPSC); he is incarcerated at the Avoyelles Correctional Center (AVC) in Cottonport, Louisiana.

This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. A Report and Recommendation was issued on August 15, 2006, recommending dismissal for failure to exhaust administrative remedies. The plaintiff objected, and the district judge declined to adopt the Report and Recommendation, referring the case back to the undersigned for further consideration.

## STATEMENT OF THE CASE

Plaintiff Montecino filed the instant suit on July 7, 2006, naming as defendants Lynn Cooper, James Cooper, Anthony Conner, Clyde Benson, Blaine Villmarette, and Richard Tiser. In his complaint Plaintiff specifically stated that there IS a grievance procedure at AVC, and that he DID NOT file an administrative grievance claiming that it is "not mandatory when bringing a 1983 action, and decision by warden would be unfair, and waste of time." [Doc. #1-1, p. 2]

Plaintiff claims that he was denied due process of law at AVC. He alleges that, on January

16, 2006, he requested placement in protective custody at a disciplinary hearing. [Doc. #1-1, p.3] He was told by Villmarette that the hearing was not the proper forum for making such a request, and the request should be made to the shift lieutenant. Plaintiff claims that he requested placement in protective custody through the shift lieutenant, but his request was denied. Plaintiff was ordered to return to his cell assignment, but he refused for his safety. Plaintiff was written up for aggravated disobedience and was placed in administrative segregation.

On January 18, 2006, Plaintiff was brought before the disciplinary board for the aggravated disobedience charge. [Doc. #1-1, p.4] He asked for an investigation but chairman Villmarette denied the request. Plaintiff was ordered to return to his cell in the working cellblock. He claims that on January 19, 2006, another inmate entered his cell and sexually assaulted him. [Doc. #1-1, p.5] When Plaintiff left his cell several hours later, he again sought protective custody through the shift lieutenant; his request was denied. Plaintiff refused to return to his cell and was placed in segregation.

While in segregation, Plaintiff wrote a letter stating that he had been raped earlier that day. He was escorted to the infirmary and examined by two nurses, who, according to Plaintiff, provided conflicting opinions. [Doc. #1-1, p.5] Plaintiff asked that he be taken to the hospital for an "internal examination" by a medical doctor to determine the extent of injuries, but his request was denied. He was placed in a medical isolation cell and was told he would be seeing the warden.

On January 20, 2006, Plaintiff alleges that he was taken before Warden Lynn Cooper, Lt. James Cooper, and another warden named Bud Hayes. [Doc. #1-1, p.6] Plaintiff informed the men that he had been raped, but James Cooper said he did not believe Plaintiff because Plaintiff is a big man. Plaintiff claims that Lynn Cooper accused him of being a "faggot" and claiming he was raped

2

so his wife and mother would not find out he was homosexual. [Doc. #1-1, p.6] Plaintiff asked to terminate the conversation and was taken back to medical isolation. Anthony Conner then met with Plaintiff and stated that he did not believe Plaintiff had been raped because he is a large man. Conner informed Plaintiff that he believed Plaintiff was a homosexual. [Doc. #1-1, p.6]

Plaintiff then received a disciplinary charge stating that he voluntarily participated in the sex act, but the staff statement in the charge did not have any facts indicating that Plaintiff was a voluntary participant rather than a victim. The staff statement was based only on the claims of Plaintiff's assailant that the act was consensual. [Doc. #1-1, p.6] On January 23, 2006, Plaintiff was brought before the disciplinary board and the charge was placed under investigation. On January 25, Plaintiff returned before the board and was found guilty of an aggravated sex offense resulting in ten days isolation and "good time" loss of 180 days.

Plaintiff alleges that he continued making requests for protective custody, one request being granted for seven days. Conner investigated and recommended that Plaintiff be placed back in general custody.

Plaintiff claims that he is continually harassed by security in the form of disciplinary write-ups and statements regarding his sexuality. He specifically alleges that Defendant Tiser conducts a "shakedown" of Plaintiff's cell and a "strip search" of Plaintiff every time Tiser is on duty. [Doc. #1-1, p.8]

On March 8, 2006, after a humiliating strip search, Plaintiff sent a letter to Warden Lynn Cooper outlining the details of the search and harassment by Lt. Tiser. Plaintiff received no reply. On April 4, Plaintiff was talking to his mother on the telephone at which time Tiser entered Plaintiff's cell and began throwing his belongings and reading Plaintiff's legal papers. [Doc. #1-1,

3

p.8] Plaintiff found his paperwork and belongings in disarray when he returned to his cell. He claims that Tiser was angry that Plaintiff mentioned him in his legal documents and threatened Plaintiff by stating "I got you." [Doc. #1-1, p.8] Plaintiff stated that he was going to tell his mother about the threats. He claims that Tiser left the cell, but returned with a chemical agent which he used to "gas" Plaintiff's cell. Plaintiff received a disciplinary violation for aggravated disobedience stating that he was "yelling and cursing" which necessitated the use of a chemical agent. Plaintiff wrote a letter to Warden Clyde Benson, but no action was taken.

## LAW AND ANALYSIS

1. Reconsideration of Exhaustion

Plaintiff objected to the Report and Recommendation stating, "The court was wrong in assuming that... I did not file administrative grievance." First, the court did not simply assume that Plaintiff had not filed an administrative grievance; rather, Plaintiff's signed complaint specifically states that AVC has a prison grievance procedure, but that he did not file an administrative grievance based on the facts that form the basis of the lawsuit. [See Doc. #1-1, p. 2] The complaint clearly asks if Plaintiff filed a grievance regarding the facts of which he complains in this lawsuit, and Plaintiff checked "NO", explaining that he did not file an ARP because it is "not mandatory when bringing a 1983 action, and decision by Warden would be unfair and waste of time." [Doc. #1-1, p.2]  To claim otherwise is a contradiction of Plaintiff's sworn complaint.

Next, Plaintiff attached to his objection copies of responses to a grievance he filed about the AVC staff making derogatory remarks to Plaintiff during an interrogation. Plaintiff did not submit to the Court any documents regarding grievances filed for sexual assault or other abuse. However, out of an abundance of caution and because of the Supreme Court's recent conclusion that the failure

4

to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints, Plaintiff's claim will be further analyzed as if exhausted. See Jones v. Bock, 127 S. Ct. 910, 921 (U.S. 2007).

2. Due Process of Law & Disciplinary Hearing

Plaintiff alleges that he was denied due process of law in his disciplinary convictions. First, Plaintiff claims that he requested placement in protective custody during a disciplinary hearing.[1] [Doc. #1-1, p.3] He was told by Defendant Villmarette that the hearing was not the proper forum for making such a request, and the request should be made to the "shift lieutenant." Plaintiff claims that he later requested placement in protective custody through the shift lieutenant, but his request was denied. Plaintiff was ordered to return to his cell assignment, but he refused, and he was written up for aggravated disobedience. As a result, Plaintiff was placed in administrative segregation.

On January 18, 2006, Plaintiff was brought before the disciplinary board for the aggravated disobedience charge. [Doc. #1-1, p.4] He asked for an investigation, but chairman Villmarette denied the request. Plaintiff was presumably convicted of the offense, and he states that he was ordered to return to his cell in the working cellblock. Then, Plaintiff alleges that on January 19, 2006, an inmate entered his cell and sexually assaulted him. [Doc. #1-1, p.5] Plaintiff did not leave his cell until several hours later when he asked the shift lieutenant to put him in protective custody, but his request was denied. Plaintiff again refused to return to his cell and was placed back in segregation and written up for an aggravated sex offense.

Plaintiff stayed in protective custody for several days while the sex offense charge was

---

[1] Plaintiff does not state what the subject of the disciplinary hearing was or whether he was convicted.

investigated. However, as a result of the investigation, on January 25, 2006, Plaintiff was found guilty of the sex offense. Plaintiff was sentenced to ten days in isolation and a loss of 180 days of good time credit. Plaintiff claims that his conviction was based on biased testimony, resulting in a denial of due process.

First, as to Plaintiff's disciplinary convictions, Prisoners cannot bring § 1983 actions seeking damages based upon a conviction received in a prison disciplinary proceeding until such time as the conviction has been (1) reversed on direct appeal, (2) expunged by executive order, or (3) otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of *habeas corpus*, if a favorable judgment would "necessarily imply" the invalidity of the prisoner's "conviction." Heck v. Humphry, 512 U.S. 477, 486-487 (1994). A conviction for purposes of a Heck analysis includes a ruling in a prison disciplinary proceeding that results in a change in the prisoner's sentence, including loss of "good time" credits. Edwards v. Balisok, 520 U.S. 641 (1997), Stone-Bey v. Barnes, 120 F.3d 718 (7th Cir. 1997). "The 'conviction' in the prison disciplinary sense is the finding of guilt on the disciplinary charge, and if success of the plaintiff's section 1983 claim necessarily would imply the invalidity of that finding, then Heck bars the claim until such time as its requirements are satisfied." Edwards, 520 U.S. at 646; Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998). Plaintiff has not alleged or established that his prison disciplinary conviction was reversed, expunged, or otherwise declared invalid, and a favorable finding that his due process rights were denied would necessarily imply the invalidity of the conviction. As such, his due process claims should be dismissed.

3.  Conditions of Confinement

Plaintiff claims that, by not placing him in protective custody, the defendants are subjecting

6

him to unconstitutional conditions of confinement. In determining whether a particular condition of confinement is cruel and unusual under the Eighth Amendment, the courts should determine whether or not the condition manifests a "wanton and unnecessary infliction of pain," or, whether the condition is "grossly disproportionate to the severity of the crime warranting imprisonment," and, finally, whether the condition results in the deprivation of the "the minimal civilized measure of life's necessities." Wilson v. Lynaugh, 878 F.2d at 848 quoting Rhodes v. Chapman, 452 U.S. at 346-47.

Thus, in order for the condition to constitute cruel and unusual punishment, conduct or conditions that do not purport to be punishment must involve more than ordinary lack of due care for the prisoner's interest or safety. Whitley v. Albers, 474 U.S. 312, 319 (1986); Gillespie v. Crawford, 833 F.2d 47, 50 (5th Cir.1987). After all, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock," Whitley, 475 U.S. at 319. When challenging a condition of confinement, a prisoner must show that the defendants have exhibited "deliberate indifference." Wilson v. Seiter, 501 U.S. 294, 303 (1991). Mere negligence does not satisfy this standard. Id.

Such claims must also satisfy tests which look to both objective and subjective components. Davis v. Scott, 157 F.3 1003, 1006 (5th Cir.1998), citing Hudson v. McMillian, 503 U.S. 1, 8 (1992). With regard to the issue of deliberate indifference, the Supreme Court has stated that "[A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or

7

safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. 825, 837-38 (1994); see Horton v. Cockrell, 70 F.3d 397, 400 (5th Cir.1995).

In the instant matter, Plaintiff cannot show deliberate indifference on the part of the defendants. To the contrary, according to the information supplied by Plaintiff, he was, on various occasions, placed in segregation or isolation while claims made by him and charges against him were investigated. For example, Plaintiff was placed in segregation on January 19, while the sex offense was being investigated [Doc. #1-1, p.5, ¶15]; also, he was placed in protective custody for seven days during a subsequent investigation. [Doc. #1-1, p.7 ¶27] While Plaintiff disagrees with the disciplinary board's conclusions regarding the conviction, it is undisputed that the defendants did conduct multiple investigations and also placed plaintiff in protective custody during those investigations. Therefore, it is clear that the defendants were not deliberately indifferent. The defendants did not knowingly disregard an excessive risk. Rather, they investigated, on more than one occasion, a risk alleged by Plaintiff and found that he was guilty of the charges against him.

3.  Retaliation

Plaintiff does not allege that he was sexually assaulted on any occasion other than the one specified in the complaint. However, he claims that since the investigation, he has suffered from continual harassment by security in the form of disciplinary write-ups and verbal harassment. Claims of verbal abuse are not actionable under § 1983. See Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir.1997) (verbal abuse or harassment by a prison guard does not amount to an Eighth

Amendment violation, citing Bender v. Brumley, 1 F.3d 271, 274 n. 4 (5th Cir.1993); see also Adkins v. Rodriguez, 59 F.3d 1034 (10th Cir.1995) (verbal sexual harassment by jailer, while outrageous and unacceptable, did not amount to a violation of the inmate's Eighth Amendment rights); McDowell v. Jones, 990 F.2d 433 (8th Cir.1993) (verbal threats and name calling usually are not actionable under § 1983); Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir.1986) (*per curiam*) (name calling does not allege a constitutional claim). Therefore, to the extent that Plaintiff claims a violation of his Eighth Amendment rights occurred when the defendants verbally harassed him, the allegations fail to state a claim for which relief may be granted.

Furthermore, 42 U.S.C. § 1997e(e) provides, "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Plaintiff does not allege that the harassment or alleged retaliation by the defendants resulted in any physical injury.

For the forgoing reasons, Plaintiff's complaint lacks an arguable basis in law and fact and should be DISMISSED with prejudice as frivolous and failing to state a claim for which relief may be granted.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following**

9

the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers at Alexandria, Louisiana, this 3rd day of April, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE